UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| NANCY MORTENSEN, | ) | NO.  CV-10-3006-LRS |
| Plaintiff, | ) | |
| | ) | ORDER GRANTING IN PART |
| v. | ) | AND DENYING IN PART |
| | ) | DEFENDANTS' MOTION FOR |
| CITY OF GRANGER; OFFICER R. J. | ) | SUMMARY JUDGMENT |
| KAMPERT and RAMONA FONSECA; | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Before the Court is Defendants' Motion for Summary Judgment (ECF. No. 18) filed pursuant to Fed. R. Civ. P. 56(b) on March 8, 2011, and noted without oral argument.  Plaintiff Nancy Mortensen requested oral argument, which was granted, and a hearing was held on May 4, 2011 in Yakima.  Patrick McMahon participated on behalf of  Defendants; William Pickett participated on behalf of Plaintiff.  The court also heard other collateral pending motions. At the conclusion of the hearing, the court placed Defendants' motion for summary judgment under advisement.

**I. BACKGROUND**

Plaintiff Nancy Mortensen, a Granger Public Works' employee, brings this action for economic and non-economic damages allegedly sustained when she was verbally told that she was being arrested by Defendant Kampert on May 14, 2008 in Granger, Washington for allegedly taking an ice-cream sundae with strawberries worth $2.50 without making payment to the City of Granger's Dinostore snack bar.  Plaintiff filed a notice of claim with the City of Granger on January 8, 2009. Plaintiff originally filed her Complaint on

ORDER - 1

January 29, 2010 in the Yakima County Superior Court.  Defendants
filed for removal to federal court on February 10, 2010.
Plaintiff asserts claims of Fourth Amendment violations,
unlawful/false arrest and seizure pursuant to 42 U.S.C. § 1983,
abuse of process, and negligence.

## II.   SUMMARY OF FACTS FROM EACH PARTIES' PERSPECTIVE

The facts important to resolution of the issues at hand are
hotly disputed. The following facts are undisputed, except where
otherwise indicated.

On May 14, 2008, the acting Chief of Police for Granger,
Shane Mortensen gave Officer Kampert the assignment of
conducting an investigation of a possible theft of an ice-cream
sundae involving a Granger Public Works' employee, Plaintiff Nancy
Mortensen.  As part of the investigation, the acting Chief handed
Officer Kampert a typed statement dated May 12, 2008 and authored
by Defendant Mayor Fonseca's husband, Hector Fonseca, wherein Mr.
Fonseca observed the Plaintiff take a bowl of ice cream and
strawberries from the Dinostore.  The statement from Mr. Fonseca
indicates that he asked an employee at the time whether the ice
cream item had been paid for and Mr. Fonseca was told that
Plaintiff Mortensen had not paid for the sundae.

On May 14, 2008, Officer Kampert contacted Mr. Fonseca who
stated that he observed Plaintiff Mortensen getting ice cream and
strawberries and leaving the store without observing her pay for
the items.  Mr. Fonseca further informed the officer that he asked
Dinostore employee Amber Moreno whether Mortensen had paid for the
ice cream and Moreno replied "no."  Officer Kampert contacted
Dinostore employee Amber Moreno, subsequent to interviewing Mr.

ORDER - 2

Fonseca, and was told that Ms. Mortensen procured the ice cream item, did not ring in the sale, and left the Dinostore with the item.  Ms. Moreno provided a signed statement regarding her observations of Ms. Mortensen dated May 14, 2008.

Subsequent to this investigation, Officer Kampert requested Ms. Mortensen to meet him at the Granger Police Station.  Officer Kampert advised he was conducting a criminal investigation for theft and began reading Ms. Mortensen her Miranda warnings.  Ms. Mortensen requested that her supervisor (Jack Burns) and a union representative  be present before they proceeded further. Plaintiff Mortensen was advised that, because this was a criminal investigation, her supervisor and union representative were not entitled to be present.

Plaintiff Mortensen's Miranda warnings were read to her and she stated she understood her rights. Subsequently, Plaintiff Mortensen waived her right to remain silent and agreed to discuss the criminal investigation with the police officer.  After waiving Miranda, Plaintiff Mortensen stated she had receipts for everything she purchased.

According to Plaintiff, she has been an exemplary employee of the  City  of  Granger for  the  last five years, and often works behind the counter of the City owned Dinostore snack bar.  On or about May 12,2008 at 3:00p.m., Plaintiff entered the Dinostore with the intent to purchase an ice-cream sundae. Only two other parties were present in the  store at this time:  a seated customer, Robert Rodriguez and Dinostore employee Amber Moreno. Prior to obtaining the ice-cream, Plaintiff walked to the store's cash register, ringing in her purchase and then paying $2.50 into

ORDER - 3

the till. This transaction was recorded on the register's internal receipt roll as: DATE: 5/12/2008 MON TIME 15:06 - Total $2.50.  Plaintiff then walked  over to the ice-cream machine and prepared her own strawberry  sundae.  While Plaintiff was placing the strawberries on  her  sundae, Hector Fonseca (spouse of the City's Mayor, Defendant Ramona Fonseca) entered the store. Hector Fonseca walked up to Plaintiff, looked at the ice-cream sundae and stated, "Is that for me?" to which Plaintiff replied "no," and walked out of the store with the sundae.  ECF No. 1, Complaint, ¶4.1.

Defendants state there was in effect a Public Works' policy regarding employees not ringing up their own purchases and requiring employees to identity, with their name on the receipt, purchases made from the Dinostore.  Officer Kampert was also aware, prior to his contact with Plaintiff Mortensen on May 14, 2008, that the Public Works' policy regarding employee purchases from the Dinostore, had been explained to the various departments within the City of Granger. Plaintiff was aware of the policy. Plaintiff had not signed any paperwork for this policy.

Plaintiff also states that, at times, there may not have been enough money to ring in a particular transaction on the cash register, so a handwritten receipt would be prepared and added to the register the following day.

The Plaintiff was allowed to leave the police station on her own and meet Officer Kampert at the Dinostore.  Upon arrival at the Dinostore, Officer Kampert asked employees Maria Botello and Amber Moreno if either knew anything about "handwritten receipts" and they stated they didn't know about them.  At the store, the

ORDER - 4

Plaintiff went to a desk and produced a handwritten receipt for
three candy bars and a bag of chips totaling $3.00, initialed
"N.M." and dated May 13, 2008.  Plaintiff Mortensen was advised
that she was under arrest.

Plaintiff Mortensen then showed Officer Kampert a cash
register receipt dated May 12, 2008, which suggested that a
transaction occurring at approximately 15:00 hours purportedly
representing the $2.50 ice cream with strawberries allegedly
stolen from the Dinostore by the Plaintiff.  After being shown the
register receipt by Plaintiff Mortensen, Officer Kampert rejected
the receipt as proof that she paid for the ice-cream and
strawberries because he was not able to discern who rang up the
item, or whether the item was actually paid for by Plaintiff
Mortensen.

During the investigation, and subsequent to being verbally
informed that she was under arrest, the Plaintiff was never
handcuffed or booked into jail.  Plaintiff was never issued a
criminal citation for Theft Third Degree or for any crime and no
criminal charges were filed with any court initiating any criminal
proceedings against the Plaintiff.

The matter and investigation was referred to the Granger
Prosecuting Attorney who, after reviewing the same evidence,
purportedly provided the legal opinion that Plaintiff Mortensen
should be charged with Theft Third Degree pursuant to RCW
9A.56.050. No charges were filed against the Plaintiff, however,
with any court.

**[PLAINTIFF'S VERSION OF FACTS]**

Shortly after Mayor Fonseca was elected in January of 2008,

ORDER - 5

1  Defendant Kampert informed Officer Dave Leary that he (Sgt.
2  Kampert) had had secret meetings with Defendant Mayor Fonseca, the
3  subject of which was how the department heads could all be fired.
4  The three department heads were: Plaintiff's supervisor Jack Burns
5  at Public Works, Chief Robert Perales at the Police Department,
6  and Alice Koerner the City Clerk.  Chief Robert Perales had asked
7  for the resignation of Kampert in 2006, for sexual misconduct and
8  for stalking one of the female City Council members.

9      After Defendant Mayor Fonseca was elected she rehired Officer
10 Kampert in February of 2008 over the protests of Chief Perales.
11 Shortly after Defendant Officer Kampert was rehired, Plainitff
12 asserts that both Kampert and Mayor Fonseca talked another
13 employee into filing a complaint against Chief Perales claiming
14 that he repeatedly tazed her. She was tazed voluntarily at a
15 training class.  Because of the alleged tazing incident, Chief
16 Perales was put on administrative leave.

17     Defendant Kampert told Officer Leary that he (Officer Leary)
18 was to report to him (Kampert) anything he observed regarding the
19 department heads that could get them fired. Defendant Kampert told
20 Officer Leary that he (Kampert) had filed a complaint with the
21 State Auditor against one department head, Alice Koerner, the City
22 Clerk. Defendant Kampert bragged to Officer Leary that the City
23 Clerk could not withstand the stress of the complaint and would
24 either resign or be fired.

25     Defendant Kampert bragged to Officer Leary how he (Kampert)
26 attempted to manipulate the investigation of Nancy Mortensen so as
27 to anger department head Jack Burns and thereby goad him into
28 doing something rash, like disorderly conduct or obstruction of

ORDER - 6

justice, so that he would be fired.  During the investigation of Plaintiff Nancy Mortensen, Defendant Kampert met with her at the Dinostore. Plaintiff Mortensen brought her supervisor Jack Burns with her.  Defendant Kampert ordered Jack Burns to stay away from himself and Nancy Mortensen or he would be arrested for obstruction of justice. This made Jack Burns angry. Jack Burns thought that Defendant Kampert was acting as if he already had determined that he, Jack Burnes, was going to be a problem. He kept threatening to arrest him. Defendant Kampert then announced that Plaintiff Nancy Mortensen was under arrest.

The normal procedure for the Granger Police Department in cases of petty theft would be to investigate, take statements and turn a report over to the City Prosecutor. Normally the person would not be arrested.  However, Defendant Kampert purportedly bragged to Office Leary that the announcement of the arrest was done for the sole purpose of aggravating Jack Burns, hoping that he would take some step towards disorderly conduct or obstruction of justice.[1]  Despite the announcement that Nancy Mortensen was under arrest she was never booked or taken to jail.  Although Defendant Kampert maintains that Nancy Mortensen was free to go after he left the Dinostore,  Nancy Mortensen did not think she was free to go until the Mayor was called, who in turn called the Police Department and was told she was free to go.

Plaintiff Nancy Mortensen was psychologically damaged by the public announcement that she was "under arrest".  Chief Perales hired an attorney and was reinstated as Chief of Police.  After

---

[1]Indeed a large part of Defendant Kampert's report regarding Nancy Mortensen has to do with Jack Burn's behavior and whether or not he should be charged with obstructing justice.

ORDER - 7

1  Chief Perales was reinstated, Defendant Kampert resigned.
2  **UNLAWFUL ARREST AND QUALIFIED IMMUNITY**
3      Defendants argue that Defendant Kampert had probable cause to
4  arrest Plaintiff Nancy Mortensen thereby precluding recovery of
5  damages by Plaintiff on any theory which has been pleaded.
6      The Fourth Amendment requires law enforcement officers to
7  have probable cause before making a warrantless arrest. *Michigan*
8  *v. Summers*, 452 U.S. 692, 700, 101 S.Ct. 2587 (1981).  "Probable
9  cause to arrest exists when officers have knowledge or reasonably
10 trustworthy information sufficient to lead a person of reasonable
11 caution to believe that an offense has been or is being committed
12 by the person being arrested." *United States v. Lopez*, 482 F.3d
13 1067, 1072 (9th Cir. 2007).  An arrest is unlawful unless there is
14 probable cause to believe a specific criminal statute has been or
15 is being violated. *Devenpeck v. Alford*, 543 U.S. 146, 152, 124
16 S.Ct. 588 (2004).  Because probable cause is a wholly objective
17 "reasonable officer" standard, the officer's subjective motivation
18 is irrelevant. *Whren v. United States*, 517 U.S. 806, 813, 116
19 S.Ct. 1769 (1996).
20      An action is "reasonable" under the Fourth Amendment,
21 regardless of the individual officer's state of mind, "as long as
22 the circumstances, viewed *objectively*, justify [the] action."
23 *Scott v. United States*, 436 U.S. 128, 138, 98 S.Ct. 1717, 56
24 L.Ed.2d 168 (1978)(emphasis added).  The officer's subjective
25 motivation is irrelevant. *See Bond v. United States*, 529 U.S. 334,
26 338, n. 2, 120 S.Ct. 1462, 146 L.Ed.2d 365 (2000) ("The parties
27 properly agree that the subjective intent of the law enforcement
28 officer is irrelevant in determining whether that officer's

ORDER - 8

actions violate the Fourth Amendment ...; the issue is not his state of mind, but the objective effect of his actions"). Stated differently, motivation and subjective belief are irrelevant except as they may shed light on the sufficiency of the evidence. See NLRB v. Vegas Vic, Inc., 546 F.2d 828, 829 (9th Cir.1976).

The Court is required to construe the testimony most favorably to Plaintiff, as the non-moving party.  The current record shows that Defendant Kampert had purportedly been advised by Defendant Mayor Fonseca to closely police and observe various city employees and department heads who she wished to terminate. On or about May 14, 2008, Defendant Kampert contacted Mr. Fonseca (husband of Defendant Mayor Fonseca) and was informed by him that Plaintiff Mortensen had obtained ice-cream and strawberries from the Dinostore and that he did not see Ms. Mortensen pay for the items.  Defendant Kampert was advised by Hector Fonseca that employee Amber Moreno had also observed the incident.  Based on that information, Kampert interviewed Moreno and was told that Plaintiff in this case had procured the ice-cream item but did not ring in the sale at the Dinostore before she left.  This oral statement was later backed up by a signed statement concerning her observations.

Based on his investigation, Defendant Kampert requested Mortensen to meet him at the Granger Police Department.  Plaintiff was advised by Kampert that he was conducting a criminal investigation for theft and Plaintiff ultimately explained that she had a receipt for the purchase.  However, Defendant Kampert concluded that the receipt did not establish actual purchase of the ice-cream and strawberries.

ORDER - 9

1    In opposing Defendants' Motion For Summary Judgment,

2  Plaintiff submitted a sworn affidavit of Granger Police Officer

3  Dave Leary who stated that Defendant Kampert had "bragged to me

4  about how he had tried to utilize the situation to try to get

5  Public Works Director Jack Burns fired."  Leary's affidavit goes

6  on to recite that ". . . Kampert stated that he deliberately tried

7  to start an argument with Jack Burns when he falsely arrested Ms.

8  Mortensen, again in an attempt to get Jack Burns to do something

9  for which he could be arrested and then fired by the mayor."

10    In light of the statements attributable to Defendant Kampert

11  by Officer Leary, the current state of the record reflects the

12  inescapable conclusion that the court cannot find as a matter of

13  law that probable cause for the arrest existed.  "The rule is that

14  unless the evidence conclusively establishes the lawfulness of the

15  arrest, it is a question of fact for the jury to determine whether

16  an arresting officer had probable cause."  *Daniel v. State*, 36

17  Wash.App. 59 (1983).  Assuming the state of the record does not

18  change at trial, the trier of fact will ultimately have to decide

19  the existence of probable cause.  Accordingly, summary judgment is

20  not appropriate at this juncture.  Testimony will be necessary to

21  decide the underlying factual dispute.  Therefore, summary

22  judgment is denied with respect to Plaintiff's unlawful arrest

23  claim.

24    Defendant asks that the court find Defendant Kampert to be

25  protected by qualified immunity because the officer had:  1)

26  carried out a statutory duty; 2) in accord with the procedures

27  dictated to him by statute and superiors; and 3) that he had acted

28  reasonably.  However, if credence is given to the Leary affidavit,

Kampert cannot be in compliance with all three of the requirements for qualified immunity due to what he apparently acknowledged as a "false arrest."  Dismissal of Defendant Kampert, at this juncture, would therefore be inappropriate.

**ABUSE OF PROCESS CLAIM**

Defendants argue there is no evidence to substantiate the claim that either Defendant Kampert or Defendant Fonseca engaged in abuse of process and that this claim must be dismissed. In order to have a claim for abuse of process, Plaintiff Mortensen must prove the following: (1) the existence of an ulterior purpose to accomplish an objective not within the proper scope of the process; and (2) an act in the use of the legal process not proper in regular prosecution of the proceedings. *Batten v. Abrahams*, 28 Wn.App. 737, 745 (1981). The court finds that here, no process issued requiring the presence of the Plaintiff or her property in any judicial proceeding. She was not issued a criminal citation requiring her to appear in court. She was not booked into jail for the alleged criminal offense requiring her appear before a judge at an arraignment or preliminary hearing. Based on the foregoing, this claim must be dismissed.

**INDIVIDUAL NEGLIGENCE (INVESTIGATION/HIRING/SUPERVISION)**

As to negligent investigation by Defendant Kampert, a number of Washington cases hold, and Plaintiff's counsel  conceded at oral argument, that a Negligent Investigation claim against law enforcement is not cognizable in Washington. See *Keates v. Vancouver*, 73 Wn.App. 257-267 (1994).  A closely related allegation dealing with negligence attributable to the City of Granger of necessity, would also fail.

As to negligent hiring and/or supervision, Defendants assert that Plaintiff's claim must be dismissed. To prove negligent hiring in Washington, the Plaintiff must demonstrate that: (1) the employee knew or, in the exercise of ordinary care, should have known of its' employees unfitness at the time of hiring, and (2) the negligently hired employee proximately caused the resulting injuries. *Carlsen v. The Wackenhut Corp.*, 73 Wn.App. 247, 252-53 (1994). Here, there is no negligence for the manner in how the theft investigation of Plaintiff Mortensen was conducted. Consequently, Defendant City is not negligent for hiring a police officer carrying out a police criminal investigation for which he cannot be liable.

As to the negligent supervision claim, Defendants argue that there was no negligence by the individual Defendants, and therefore dismissal of any negligent supervision cause of action is appropriate.

Plaintiff opposes this argument stating that it was negligent to rehire Defendant Kampert in February of 2008 over the protests of Chief Perales and after Defendant Kampert had resigned following accusations of sexual misconduct and stalking a female employee.

The elements of a negligent hiring, supervision, and retention claim include: (1) a general duty on the employer to use reasonable care in the training, supervision; and retention of employees to ensure that they are fit for their positions; (2) breach; (3) injury; and (4) causation. *Snyder v. Med. Serv. Corp. of E. Wash.*, 98 Wash.App. 315, 323, 988 P.2d 1023 (1999), *aff'd*, 145 Wash.2d 233, 35 P.3d 1158 (2001).

ORDER - 12

1    The court finds the Plaintiff has failed to show that hiring,

2  failing to supervise or retaining the employee (Defendant Kampert)

3  was a proximate cause of the Plaintiff's alleged injuries.  The

4  court finds that all negligence-related claims suffer from a

5  similar fatal deficiency, namely proximate causation.  The

6  negligence claims are therefore dismissed.

7  **42 U.S.C. §1983 CLAIM/QUALIFIED IMMUNITY DEFENSE**

8    Section 1983 provides, in pertinent part, that "[e]very

9  person who, under color of any statute ... subjects, or causes to

10 be subjected, any citizen of the United States or other person

11 within the jurisdiction thereof to the deprivation of any rights,

12 privileges, or immunities secured by the Constitution and laws,

13 shall be liable to the party injured ...." 42 U.S.C. § 1983. A

14 person "subjects" another to the deprivation of a constitutional

15 right, within the meaning of § 1983, if he does an affirmative

16 act, participates in another's affirmative act, or omits to

17 perform an act which he is legally required to do that causes the

18 deprivation of which complaint is made. *Johnson v. Duffy*, 588 F.2d

19 740, 743 (9th Cir.1978).  Alternatively, personal participation is

20 not the only predicate for § 1983 liability.  Anyone who "causes"

21 any citizen to be subjected to a constitutional deprivation is

22 also liable.  The requisite causal connection can be established

23 not only by some kind of direct personal participation in the

24 deprivation, but also by setting in motion a series of acts by

25 others which the actor knows or reasonably should know would cause

26 others to inflict the constitutional injury.  *Id*.

27    As discussed above, whether Defendant Kampert had probable

28 cause to arrest Plaintiff for allegedly taking an ice-cream sundae

ORDER - 13

1  involves disputed fact questions, precluding summary judgment on
2  Plaintiff's alleged First, Fourth and Fourteenth Amendment
3  violations in her § 1983 claim.  Assuming that Defendant Kampert
4  did not have probable cause for arrest, the next question is
5  whether the right to be free from unreasonable restraint was well
6  known at the time the incident occurred.  In this case, the right
7  had been well established but the question would remain as to
8  whether Defendant Kampert acted reasonably in finding probable
9  cause existed.  For the foregoing reasons, summary judgment is
10 denied with respect to Plaintiff's § 1983 claim.

11 ***MONELL* LIABILITY STANDARD**

12     Under § 1983 a public entity defendant cannot be held liable
13 for a § 1983 violation caused by an individual employee's actions
14 under a theory of respondeat superior. *Monell v. Dept. of Soc.*
15 *Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).
16 In order to be liable, the defendant must act as a "lawmaker[ ] or
17 ... [one] whose edicts may fairly be said to represent official
18 policy." *Id.* at 691, 98 S.Ct. 2018.  Under *Monell*, municipal
19 liability must be based upon enforcement of a municipal policy or
20 custom that causes the deprivation of a plaintiff's federal right,
21 and not upon the municipality's mere employment of a
22 constitutional tortfeasor. *Id*. To maintain a § 1983 claim against
23 a public entity defendant, or supervisors not personally involved
24 in the alleged violation, a plaintiff must allege that his or her
25 constitutional injury resulted from a policy, practice or custom
26 of the local entity. *Id*.  While liability can also be posited on
27 inadequate training, there is no proof of that in the record.

28     There are three ways to meet the policy, practice, or custom

requirement for municipal liability under § 1983: (1) the
plaintiff may prove that a public entity employee committed the
alleged constitutional violation pursuant to a formal policy or a
longstanding practice or custom, which constitutes the standard
operating procedure of the local government entity; (2) the
plaintiff may establish that the individual who committed the
constitutional tort was an official with "final policy-making
authority" and that the challenged action itself thus constituted
an act of official government policy; or (3) the plaintiff may
prove that an official with final policy-making authority ratified
a subordinate's unconstitutional decision or action. *Hopper v.
City of Pasco*, 241 F.3d 1067, 1083 (9th Cir.2001)).

An unconstitutional policy need not be formal or written to
create municipal liability under § 1983; however, it must be so
permanent and well settled as to constitute a custom or usage with
the force of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144,
167-68, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Furthermore,
"[p]roof of a single incident of unconstitutional activity is not
sufficient to impose liability under *Monell*, unless proof of the
incident includes proof that it was caused by an existing,
unconstitutional municipal policy, which policy can be attributed
to a municipal policy maker." *Oklahoma City v. Tuttle*, 471 U.S.
808, 823-24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985).

The court finds that Plaintiff has failed to provide
sufficient evidence of the existence of a custom or policy
attributable to either Defendant City of Granger or Defendant
Fonseca. Therefore, the *Monell* claim is hereby dismissed.
/ / /

**CONSPIRACY CLAIM**

Defense asserts that Plaintiff Mortensen has no evidence establishing a constitutional violation or that any of the Defendants formed an agreement to violate her constitutional rights.

Plaintiff argues that Defendant Mayor Fonseca met in secret with Defendant Sgt. Kampert and directed him to find a way to have the department heads fired which directly lead to the substantive due process violation concerning Plaintiff Mortensen. Plaintiff asserts there was an agreement to violate constitutional rights, an overt act in furtherance of the conspiracy and a violation of her substantive due process rights.

To prevail on a claim for conspiracy to violate one's constitutional rights under § 1983, the plaintiff must show specific facts to support the existence of the claimed conspiracy. *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir.1989). The elements to establish a cause of action for conspiracy under § 1983 are: (1) the existence of an express or implied agreement among the defendant officers to deprive him of his constitutional rights, and (2) an actual deprivation of those rights resulting from that agreement. *Ting v. United States*, 927 F.2d 1504, 1512 (9th Cir.1991). In addition, there must be an agreement or meeting of the minds to violate his constitutional rights. *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir.2002) (citing *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-41 (9th Cir.1989) (en banc)). A formal agreement is not necessary; an agreement may be inferred from the defendant's acts pursuant to this scheme or other circumstantial evidence. *See United States v.*

*Clevenger*, 733 F.2d 1356, 1358 (9th Cir.1984).

"To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Id*. at 441. This agreement or meeting of the minds may be inferred on the basis of circumstantial evidence, such as the actions of the defendants. *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1301 (9th Cir.1999).  A showing that defendants committed acts that "are unlikely to have been undertaken without an agreement" may support the inference of conspiracy.  *Id.* In addition, a conspiracy to violate constitutional rights must be predicated on a viable underlying constitutional claim.  See *Thornton v. City of St. Helens*, 425 F.3d 1158, 1168 (9th Cir.2005).  In addition, the claim requires "an actual deprivation of constitutional rights." *Hart v. Parks*, 450 F.3d 1059, 1071 (9th Cir.2006).  "The defendants must have, by some concerted action, intended to accomplish some unlawful objective for the purpose of harming another which results in damage." *Mendocino Envtl. Ctr.*, 192 F.3d at 1301.

Here, Plaintiff has presented no evidence to support the existence of an agreement or meeting of the minds between Defendants, whether the agreement be specific or inferred from conduct, nor does she provide any evidence that the deprivation of her rights was the result of such an agreement.  Although it is alleged that after Defendant Fonseca was elected as mayor in January of 2008, Defendant Kampert informed Officer Dave Leary that he had had secret meetings with Defendant Fonseca regarding how the department heads could all be fired, it is too speculative

to connect an alleged constitutional violation of an employee of a department head to the alleged general conspiratorial objective espoused here.  In other words, the mere alleged unlawful arrest of a department head employee, without more, is insufficient to prove a conspiracy.

As such, Plaintiff has not met her burden to designate specific facts showing that there is a genuine issue for trial as to the existence of a conspiracy between defendants. Therefore, Plaintiff cannot establish any basis for liability on her conspiracy claim against Defendants in their individual capacities.  In addition, since a municipal entity cannot conspire with itself, Plaintiff's claim against Defendants in their official capacity fails. Accordingly, the Court grants summary judgment in favor of all Defendants as to the conspiracy claim.

**IT IS ORDERED** that Defendants' Motion For Summary Judgment, ECF No. 18, is GRANTED in part and DENIED in part. All claims, **except** Plaintiff's 42 U.S.C. §1983 claim and unlawful arrest claim, are **DISMISSED** with prejudice.

**IT IS SO ORDERED.**  The District Court Executive is hereby directed to enter this order and furnish copies to counsel.

DATED this 20th day of May, 2011.


                        *s/Lonny R. Suko*
                   _____
                        LONNY R. SUKO
                   UNITED STATES DISTRICT JUDGE

ORDER - 18